Good morning, Your Honor. May it please the Court, my name is Fred Treem. I'm an attorney from Petersburg, Alaska, which is about 500 miles south of here. It's my privilege to appear before you today on behalf of two shareholders of an Alaskan native corporation, of course, sitting behind me, Mr. Rude and Mr. Rudolph. This is a case about a corporation and an internal dispute about two aspects of corporate governance, the amendment of Articles of Incorporation and a proxy solicitation to seek the approval of the proposed Articles of Incorporation. But, happily, for my cause, the case never got that far. The case never got to the point where the proxy solicitation was actually submitted to the shareholders by the corporation. And so, therefore, the two sections of ANCSA, Alaska Native Claims Settlement Act, that are cited by Siri, the appellee, simply do not apply here. I think the only question in front of us is subject matter jurisdiction. Is that correct? Absolutely. It's so narrow, it's just like that. It's the only issue. Our contention is that the exercise of the judicial power by the district court essentially violates Article 3, Section 2. Because the application of judicial power puts matters of corporate governance exclusively within the laws of the state. And, furthermore... Was there a federal statute under which the suit was brought? Yes, there are two that are mentioned in the complaint, ANCSA Section 36 and 37. We need to look first at ANCSA at its whole, in its entirety, and it's essentially a statute that does two things. It approves the settlement of a lawsuit, Alaska v. Udall, which was before this court back in 1968. And that case was resolved in a three-way settlement that was approved by Congress. And at the same time that Congress approved the settlement in ANCSA, the law that's before us here today, it also appropriated land and money to the Native corporations. There are three key features about ANCSA. Please must understand this. First of all, ANCSA does not create a cause of action. Well, that's true, counsel. How do you explain the case of Broad v. C. Alaska Court? Well, I'll happily explain that because I argued that very case here 20 years ago. Let us have it. Okay, here it is. It's a simple matter. The plaintiff in Broad, he was a Finn while his father was Finnish and his mother was Native. Mr. Broad challenged the constitutionality of ANCSA Section 7R, a statute, an amendment to ANCSA, was adopted in 1988, that allowed Native corporations to take assets and give it to a subset of privileged shareholders. And Mr. Broad said, wait a minute, that violates the takings clause. So I stood in this courtroom and argued that case, and it involves a direct challenge by a plaintiff on the face of the complaint to the constitutionality of a federal law. What bigger federal question could there be than when you challenge the constitutionality of a federal law? But here in this case, we have no challenge at all. There's no dispute about the constitutionality of the law. The law, the two sections, 36 and 37, were never before an agency, so it's not like the Grable case where the Internal Revenue Service said, we interpret it column A, and the taxpayer says, no, we have a different interpretation, column B. There's no dueling interpretations. So you're saying that it was the scope of Broad rather than the fact that it dealt with the same statute at issue here that gave us jurisdiction in that case? Well, the scope, but the nature of the case. Yeah, the constitutional claim, right? Yes, and there's no such claim made here in this case. No one on either side of this case is arguing the validity or the constitutionality of the Alaska Native Claims Settlement Act. You're saying this case does? This case does not involve any subject. I was going to say, this case doesn't, right. Broad did. Well, this is a suit brought under the statute, under the federal statute. This is a suit brought under the federal statute, correct? Well, it purports to be, but it's really a state law dispute in disguise. Well, as I look at it, it looks as though the federal statute incorporates an awful lot of state law, which is your argument. There's got so much state law in it that it's no longer a federal question. Is that the argument? Well, the district court, in an argument that's repeated here by the appellee, held that federal law essentially incorporates or federalizes the Alaska Corporations Code, including the proxy solicitations. Right. And under this theory, which is a reversing corporation, federal law subsumes state law, and therefore a claim under state law is now a federal claim. Right, that's the argument. And it's preposterous. It happens under securities law all the time, counsel, doesn't it? No. Well, I think there's one... How about 10b-5, for example? What about statute limitations, the pleading requirements, et cetera, et cetera? Most of that is state law that fills in the blanks of a federal statute with the will of Congress that it be so. Well, 10b-5 is a wonderful example. 10b-5 and the other provisions in the securities laws, such as the 1934 Act, contain three things that this statute does not contain. First, the securities law contains or expresses a clear federal cause of action. The language of the Act itself says if it's violated, the victim can go to federal court. Secondly, there's a federal remedy, a forfeiture, fine, prison sentences. And third, Section 27 of the 1934 Act, for example, provides an express conferral of federal jurisdiction on the federal courts. But if we look at ANCSA, we can look at Section 10 of ANCSA, for example. There is an express grant of federal jurisdiction, but it's a little tiny grant and it's very narrow scope and lasts for two years. And it allowed aggrieved parties two years to challenge the constitutionality. No, no, we're throwing back on 1331. That's our jurisdictional statute. Yes. All right. And I'm just saying that this court does not have jurisdiction under Section 1331. Well, I'm not sure that that's right. I mean, there are two categories of cases that are almost mirror images of one another. One is a whole series of cases, Grable being one of them and Merrill Dow being another and so on, in which there's a state cause of action or a state duty that incorporates a federal standard. And the Supreme Court has tussled with those cases over the years. And its basic answer is, well, you know, the federal standard has to have at least some significance. I can't really state the law because the Supreme Court has tangled it so much. Those are difficult cases. This is the mirror image. This is not a state statute incorporating a federal standard. This is a federal statute incorporating a state standard. And federal law is perfectly capable of saying, for purposes of federal law, the governing standards will be X, Y, and Z. X, Y, and Z may all come out of state law, but that doesn't mean it's not a suit under federal law. Federal law is incorporated for federal purposes, the state standards. That's this case. But then, Your Honor, the court needs to look at ANCSA Section 7 because ANCSA Section 7 really answers the question for us. Section 7 tells us that these corporations are created, authorized, regulated, and governed according to state law. I put Section 7. Now, give me the USC citation. Well, it's on page 9 of the agenda. It's 43S Code, Section 16. Okay, okay, hang on, let me, let me, okay, I can scan this several ways. Page? Page 9 of the agenda. Okay, I'm with you. All right, lower right-hand corner. Section 7, H1A. And that sets out the rules. Basically, it expresses what we find throughout ANCSA, and that is a continual reference to the laws of the state. Somewhere in one of these briefs, I put a chart in there. I collected all the different references. But in Section 36, which is at issue here today, there's several different explicit references to the laws of the state. Congress adopted state law to regulate these things. I know. I think we're exactly on the same page. What's the matter with that? Nothing, I think. But it tells us that these are corporations that are governed by state law with a few little tiny changes, a few little rules of conduct. But it does provide a framework. Well, for example, the alienation interest, for example, that used to be prohibited. So then the statute got amended to permit that under certain limited circumstances as defined in the Act. And it makes it clear that some of the securities law implications, like proxy solicitation and so on, will occur under state law. It kind of incorporates it by reference. Do you have any indication, any case law, that says that that is illegal or unconstitutional in any way? Well, we're not challenging illegality or constitutionality. Okay. All right. So we're back to the statute. The statute says you can do it, but you're going to basically use a state law standard. You're saying we don't have jurisdiction anymore, even though this is a federal statute and it says what you're supposed to do. Why don't we have jurisdiction in that circumstance? Well, because there are a lot of federal laws that have standards of conduct and have regulations but do not generate or create federal subject matter jurisdiction. I agree. The Small Business Act, for example. I made a whole list of them here. But let me give you an example from some time ago where the Supreme Court directly addressed this issue of incorporation by federal law of state law. A famous case, Shoshone Mining. Congress said mining disputes will be resolved by state law, but Congress created a federal cause of action. So it seems. The case got to the Supreme Court. The Supreme Court said, yeah, we're adopting state law as the standard of conduct, but there's no federal question jurisdiction. And I challenge the parties to find a Supreme Court decision that allows the incorporation of state law to create a federal cause of action unless the statute itself contains an express grant or cause of action, such as the Federal Court Claims Act, which is what the judge... Well, you know, whether or not a federal statute creates a cause of action as distinct from imposes a duty is a recurring question under federal law. Sometimes the federal statute simply imposes a duty and there's no private right of action that arises there under. I understand that. I don't think you can quarrel with the proposition that the federal statute here imposes a duty largely defined based on state law, but the federal statute imposes a duty. Do you quarrel with that proposition? It provides a standard of conduct. Right. So it imposes a duty, defines that duty by and large based on Alaska state law. Now, whether or not that provides a private cause of action is a further question, but it's unquestioned that we have a federally imposed duty defined in terms of various provisions of state law. Well, whether or not the statute not only imposes a duty but also provides a private cause of action is going to be a question of federal law. Now, merely because you lose under federal law, so I'm assuming for purposes of argument that you're right, that it merely imposes a duty but does not provide a private cause of action. So even assuming you're right on that point doesn't necessarily mean there's no federal question jurisdiction because if you lose under federal law, it doesn't mean there wasn't any jurisdiction. The only time there's no federal question jurisdiction when you lose is when the argument was frivolous. And I don't think it's a frivolous argument to say there's no private cause of action, that there is a private cause of action to enforce this duty. Well, first of all, I do think it's frivolous because if you look closely at the two statutes that Siri has cited... Anytime I've got to look closely, it sounds to me as though it's not frivolous. Well, the two statutes that Siri has invoked here, section 36 and 37, apply to corporations and directors. My clients were former directors long ago but not at any time relevant to this case. They were rank-and-file shareholders. That sounds like an argument as to the scope of the duty, not as to whether there's a private cause of action, right? Well, let's take an example. The Federal Aviation Act has full of standards of conduct that are analogous to the standard that Siri's invoking here. But when a private party suffers from a violation of the Federal Aviation Act and all the regs enacted pursuant to it, can it come to federal court? Well, many attorneys are surprised to say the answer is no. Our case is the 9th Circuit in-ring Mexico City air crash. And the same applies in other areas of law where... Well, I understand perfectly what you're saying, and you're absolutely right that many federal duties do not carry with them private causes of action. My question to you, though, is it a frivolous argument that the federal duty here does not provide a private cause of action? Not necessarily it's a winning or a losing. That doesn't matter for purposes of jurisdiction. What matters is the argument has to be frivolous. Well, I disagree that the argument has to be frivolous in order for this court to reverse the decision of the district court. Well, that may be on the merits, but we're now only questioning jurisdiction. I'd be interested to know... well, I'm sorry, did you have a chance to answer his question? No. Yeah. There are several cases here that I found that where federal question jurisdiction was invoked involving ANSCA that we've not previously discussed. One is City of Ketchikan v. Cape Fox Corporation. Another one is Teocock Navy Corp. v. Cook Inland Region, Inc. and Coneyag, Inc. v. Concord Forest Resources. I don't know whether you argued or are familiar with any of those cases, but why are those, as far as the issue of federal question jurisdiction, what light, if any, does the fact that we granted that in terms of we treated it as having federal jurisdiction, we had federal question jurisdiction, what role, if any, do these cases play? Well, let me start by saying that I believe I addressed this question and I answered it in the reply brief by going through each one of those cases, beginning at page 25 of the appellant's reply brief. And in particular, on page 29 and 30, there's a series of bullet points that mention Butener v. Cavilco, City of Ketchikan, Coneyag v. Concord, Teocock v. Surrey, the very cases, Your Honor, that you just mentioned. Now, the most interesting of these is the case that's at the top of the list that you did not mention, but let me answer that. Butener v. Cavilco involves dueling interpretations of ANSCA. There are two different subsections of ANSCA section 13. One of them, problem A, leads to a favorable result for the plaintiff, and the other, problem B, leads to a favorable result for the defendant. When two different interpretations of a federal law can lead to a result either for one party or the other, that's a substantial federal question. But that's not what we have in this case. We're not arguing at all about the meaning of the two federal statutes invoked here. What are we arguing about? What is the argument on the merits? The argument on the merits is that my clients have submitted to shareholders a false and misleading proxy statement. In other words, we're arguing about what the state law is that has been incorporated into the federal statute. I don't think it's been incorporated into the federal statute. No. Congress said when it gave the land and money to the native corporations, you will establish these pursuant to state law. Congress has no further superintendence. Okay. And Justice Clarence Thomas explained that in the case, the Benati case, where he said this hardly comports with a continued federal interest or superintendence. Okay. You're two minutes over. Let's hear from the other side, and we'll make sure to give you a chance to respond. Thank you. Thank you. If it may please the court, John O'Lenvy is endorsing Whitney for Plaintiff Cook Inlet Region Inc. The Alaska Native Claims Settlement Act, ANCSA, provides that 25% of shareholders may petition a corporation to terminate stock restrictions. And defendants Rood and Rudolph circulated such a petition and solicited signatures for that petition. If you could keep your voice up, I'd appreciate it. Okay. Siri asserted two federal claims in this case, alleging that the petition did not meet the requirements of ANCSA. One, that the proposed language of the amendment was not included with the petition, and that the signatures were solicited based on false and misleading statements in violation of ANCSA. The only issue before this court, as the court has recognized, is federal question jurisdiction. And the simple answer is that both stock restrictions and the right to petition to terminate those stock restrictions are all set forth in federal law. This is a quintessential federal law case. It basically set forth the skeletal framework on which it was to operate, right? And then the interest issue were to be filled in by state law. Is that a fair interpretation? That's a fair interpretation. And one of the important things that I think is being glossed over by my opponent is that the state law that was adopted here is for proxy solicitations. And that was adopted for the same standards to apply to petitions. Now, petitions and proxy solicitations are two different things. And so it's adopting an area of law that doesn't otherwise apply to the petitions at issue here. Now, the test is whether series claims are so insubstantial and fivolous that federal question jurisdiction is lacking. And that clearly is not the case. And so under Oneida Indian Nation, and we believe that's the case most on point, that should be the end of the jurisdictional analysis. That ends the question. Now, this court has heard numerous claims under ANCSA. They were listed out just a minute ago, including Broad v. C. Alaska, where this court held that the 1987 ANCSA amendments at issue in this case preempted state law. So it wasn't just an issue of constitutionality in that case, but also which law controls, whether it's a federal question or whether it's state law. And if there's preemption of state law and federal law controls, federal question jurisdiction should be a foregone conclusion. Now, the bedrock principle of federal question jurisdiction is that federal courts should decide important questions of federal law. And that's what we're here today for. The arising under the laws of the United States, the three-part test of being a well-pleaded complaint, being substantial enough, and being sufficiently central are all met. And even when there is a state law claim, there can be federal question jurisdiction if the federal issue is substantial and central enough to the case. Here, where the two claims that are at issue are directly implicated and made on a federal statute, it's just a quintessential federal question case. Now, the defendants made a huge concession in their reply brief at page 22. The defendants assert that if Siri had rejected their petition for failing to meet the requirements of ANCSA, that the shareholders themselves would have a federal claim and could sue in federal court. So their position is that the ANCSA corporation itself can't bring a federal claim, but the shareholders could bring a federal claim. That's a distinction without a difference. Siri is certainly entitled to pursue in federal court its federal claim that the federal statutory requirements for petitions authorized by ANCSA were not met. Now, this panel may be a little bit unfamiliar with ANCSA, and so I think it might be worth a little bit of time just talking about ANCSA. In Alaska, except for Metlakatla, there are no reservations or Indian country. And in 1971, through the passage of ANCSA, Congress settled all Aboriginal land claims in Alaska. It divided the map into 12 regions and designated 12 regional corporations to fulfill those regions. And Siri is the regional corporation for south-central Alaska around Anchorage here. Now, the ANCSA corporations receive land and money in settlement of land claims. And the ANCSA corporations are formed under state law, and state corporate law applies except to the extent that there is an ANCSA provision that is on point. And the shareholders here in each corporation are designated by federal law which shareholders will be members of each corporation. And the key distinction between an ANCSA corporation and a regular corporation generally formed under state law is that ANCSA corporation shareholders cannot sell their stock. I have a question for you. I know that federal law deals with that issue, but is there a separate chapter under Alaska corporate law that deals with the peculiarities of this corporation, or are there just general variety of corporations that then have to conform to the federal law? There's an Alaska corporations code that sets forth standards for all corporations, and there are some particular sections in there that are specific to ANCSA corporations, but not as to petitions and not as to the restrictions on stock that are found here. So there's not a whole separate chapter, but there are some subparts that pertain to these ANCSA corporations. Exactly. Now, under the 1987 amendments, which added sections 36 through 39, a corporation can terminate those stock restrictions by amending its articles of incorporation. And this was a new right for shareholders, that they could then petition their board of directors to submit such an amendment to the shareholders for a vote. And so this case concerns that right that's given, the right to petition and circulate a petition for an amendment to terminate stock restrictions. Now, this issue of the incorporation of state law into federal law, and then that makes this a state law claim, is really a red herring. Section 36C1B incorporates the state law standards for proxy solicitations for those to be the same standards that would apply to petitions under federal law. And the relevant section provides that the requirements of the laws of the state relating to the solicitation of proxies shall govern the petitions here. Now, in briefing, the defendants miscite the statutory language, leaving off the requirements of piece of that, so that they are then saying that the laws govern. That's clearly an overstatement of what the federal statute provides. And clearly, all this provision does is adopt the requirements that are under state law for state proxy regulations, embody a law that does not apply to petitions as the federal standards for the specific petitions allowed here. Now, this is, the defendants argue this as a grable case, and this certainly is not a grable case as recognized by the questions answered before. The converse is not true, that having a state law issue embedded into a federal claim does not deprive, somehow deprive the court of federal jurisdiction over a federal law claim. And there's plenty of examples, the Federal Tort Claims Act, Federal Enclave Jurisdiction, Federal Common Law, adopting the state law standards. So that should be easily dispensed with. Now, as part of the grable analysis, the defendants assert that there's only federal question jurisdiction if federal law provides a remedy. And again, this court, we've cited numerous cases where this court has heard questions of federal law under ANCSA. And again, it's an irrelevant consideration as noted by Judge Fletcher's questions in the opening under the Oneida Indian Nations question. The real analysis is whether series claims are so insubstantial and frivolous as to not be, as to not invoke federal question jurisdiction. Now, there's another false premise underlying the defendant's argument, and that is that petitions are somehow governed by the Alaska Proxy Regulations. The defendants have conceded, I think, in their reply brief that petitions are not the same as proxy solicitations. But they try to argue that the proxy regulations and the Division of Banking and Security still has jurisdiction over petitions as being related to proxies. And the argument is that once a petition is circulated, that will always necessarily lead to a proxy once the meeting is called. And that is not necessarily true. That's not universally true. The defendants may have intended that, that once they were successful in having a petition submitted to call a meeting on this particular issue, that they would then go forward and solicit proxies to be able to vote the other shareholders' votes at that meeting. It's not something that's necessarily related. You know, another similar false premise the defendant's argument is based on is that SIRI is trying to federalize all proxy challenges and entirely displace state law. Know that the INCSA claims are limited to the three types of petitions that are specifically authorized by INCSA, and this is not something that will displace all proxy regulations or make all proxy challenges issues for federal court. This is not an issue of putting out the welcome mat for hordes of state law claims. In summary, defendant's grable analysis is entirely misplaced. SIRI has asserted two federal claims under INCSA, and neither are so insubstantial or frivolous as to defeat federal question jurisdiction. This is an United Indian Nation case, not a grable or Merrill Dow case. But even if SIRI had asserted a state law claim, the INCSA issues here are substantial and meet the grable test. The district court's decision that it had subject-managed jurisdiction should be affirmed. Okay, thank you. Would you put two minutes on the clock? Thank you, Your Honor. I would like to answer briefly Judge Smith's two questions. The first question he asked was whether INCSA sets up a framework and the state law fills in the interstices, and the answer is no. INCSA was clear, Congress was clear, that it was turning over the entire regulation of the Alaska Native lands to the laws of the state, and it says so throughout. INCSA Section 7, which we talked about earlier this morning, is an example. But you see the word state laws throughout the two sections that SIRI is invoking here, laws of the state. The second question had to do with whether there's a separate chapter in the Alaska Corporations Code, and the answer is absolutely not. There's one little tiny section in Alaska law that addresses separately the matters of Alaska Native corporations, and it's focused almost exclusively on the intestate succession. Who gets native stock when a shareholder dies without a will? The cases that we mentioned briefly earlier this morning, Grable, Merrill Dow, you didn't mention Franchise Tax Board and the other one, McVeigh, those cases set out a two-pronged test that applies here. First question, is there a federal cause of action? The answer is no. INCSA does not create a cause of action. So the court must then look to see whether there's a substantial question of federal law. For example, the Broad case, a challenge to the constitutionality. That is a substantial federal issue. Now, your opposing counsel suggests there was more to that case than just the constitutional challenge. Do you disagree with what she said? I think the principal issue that took it to federal court... Well, maybe the principal issue, but was it the only issue? My memory is that it was a challenge to the constitutionality of federal law, period. If she's correct, we can easily check that. But if she's correct and there's more to it than that, and in fact the court was construing some aspect of the interrelationship between INCSA and state law, would that tend to bolster your opponent's position? No, because the reason it got here to federal court, we're talking about the Broad case in 1994, is because it was a direct challenge to the constitutionality of federal law. Other stuff might have been dragged along under ancillary or pendant jurisdiction. Finally, besides appealing to you to please look at those federal Supreme Court precedents that control. Remember, two-pronged test, is there a federal cause of action? No. Is there a substantial federal question? No. The other thing the court should do, please, is look at some Ninth Circuit precedent, and I guess it's my good fortune that two of the most useful cases are Redwood Theaters and Lippitt, and the opinions in both of those cases were written by the senior member of this panel. So I hope that... You mean Judge Goodwin? Yes, Your Honor. So, anyway. Thank you. If there are any other questions, I'm sure we'll answer them. Thank you very much. Thank both sides for good arguments. I have to be excused. Thank you. The case of Cook Inlet Region v. Rood is now submitted for decision. That completes our argument calendar for this morning. We're in adjournment until tomorrow morning. All rise. The support for this session now stands adjourned.
judges: Goodwin, Fletcher, Smith